FORMAN HOLT ELIADES & RAVIN LLC
80 Route 4 East - Suite 290
Paramus, New Jersey 07562
(201) 845-1000
Attorneys for CA 912-921 Bergen Avenue, LLC

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re: ) | CHAPTER 11 |
| ) | |
| H&S JOURNAL SQUARE ASSOCIATES LLC, ) | CASE NO. 11-11623 (JMP) |
| ) | |
| Debtor. ) | |

**NOTICE OF PERFECTION OF SECURITY INTEREST IN PROPERTY PURSUANT TO 11 U.S.C. §546(b); OBJECTION TO USE OF CASH COLLATERAL; AND REQUEST FOR ADEQUATE PROTECTION**

**TO: ALL PARTIES ON THE ATTACHED SERVICE LIST**

**PLEASE TAKE NOTICE** that CA 912-921 Bergen Avenue Associates, LLC ("CA"), by and through its attorneys, Forman Holt Eliades & Ravin LLC, hereby declares, pursuant to 11 U.S.C. §546(b), that Oritani possesses a validly perfected first lien on the following "Collateral":

1. First Tract:

BEGINNING at a point formed by the intersection of the southeasterly line of Bergen Avenue with the northeasterly line of Newkirk Street and from thence running

(1) North 62 degrees 07 minutes East, and along Bergen Avenue, 100.00 feet to the southwesterly line of the first tract of premises conveyed to the Universal Security Company by Deed of Hudson Investment Company dated May 11, 1920 and recorded in Deed Book 1413 page 629; thence
(2) South 24 degrees 25 minutes East, and along said southwesterly line of lands of said Universal Security Company, and parallel to Newkirk Street, 102.98 feet to a point; thence
(3) South 62 degrees 07 minutes West, and along the northwesterly line of lands now or formerly of the Jersey Journal and parallel to Bergen Avenue, 100.00 feet to a point in the northeasterly line of Newkirk Street; thence
(4) North 24 degrees 25 minutes West, and along Newkirk Street, 102.98 feet to a point in the southeasterly line of Bergen Avenue and the point or place of BEGINNING.

FOR INFORMATION PURPOSES ONLY: "In compliance with Chapter 157, Laws of 1977,

premises herein is Lot 42.H in Block 1868.5 on the city of Jersey City Tax Map."

Second Tract:

**Parcel One:**

BEGINNING at a point in the southeasterly side or line of Bergen Avenue as recently widened, distant northeasterly along the same 100 feet from the corner formed by the intersection of said southeasterly side or line of Bergen Avenue, as recently widened, with the northeasterly side or line of Newkirk Street, which point of beginning is in the southwesterly line of the first tract of premises conveyed to Universal Security Company, by Deed of Hudson Investment Company, dated May 11, 1920 and recorded in Deed Book 1413 page 629, and from thence running:

1) South 24 degrees 25 minutes East parallel with said northeasterly side or line of Newkirk Street and along said southwesterly line of lands so conveyed to said Universal Security Company, as aforesaid, 102.19 feet to a point in the northwesterly line of the second tract of premises conveyed to Walter P. Gardner by Deed of Universal Security Company, dated June 1, 1922 and recorded in Deed Book 1445 page 90; thence
2) North 62 degrees 7 minutes East and along said northwesterly line of lands so conveyed to Walter P. Gardner, as aforesaid, 41.32 feet to a point in the southwesterly line of lands conveyed to William M. Apgar and Besson Apgar by two deeds, one from Maria D. Thomas, dated January 4, 1911, recorded in Deed Book 108L page 144, the other from Mary L. Thomas and others, dated November 1, 1921 and recorded in Deed Book 1422 page 434; thence
3) North 26 degrees 48 minutes West and along said southwesterly line of lands so conveyed to William M. and Besson Apgar as aforesaid, .32 feet to a point in the northwesterly line of lands so conveyed to said William M. and Besson Apgar as aforesaid; thence
4) North 31 degrees 50 minutes East and along said northwesterly line of lands so conveyed to said William and Besson Apgar, as aforesaid, 30.10 feet to a point in the northeasterly line of the second tract of premises conveyed to said Universal Security Company by the Deed hereinabove mentioned; thence
5) North 27 degrees 48 minutes West along said northeasterly line of second tract, and continuing along the northeasterly line of the first tract of premises conveyed to said Universal Security Company by said Hudson Investment Company, as aforesaid, 86.50 feet to a point in said southeasterly side or line of Bergen Avenue, as recently widened and; thence
6) South 62 degrees 7 minutes West and along the said southeasterly side or line of Bergen Avenue, as recently widened, 61.26 feet to the point and place of BEGINNING. (Tax Lot 42 J Block 1868.5).

**Parcel Two:**

BEGINNING at the intersection of the Southeasterly line of Bergen Avenue and the southwesterly line of Journal Square (formerly Sip Avenue) as said street lines are now laid out, and from thence running

(1) Along the said line of Journal Square, South 58 degrees 10 minutes East 40.65 feet to a

point; thence
(2) South 31 degrees 50 minutes West 101.92 feet to a point; thence
(3) North 27 degrees 48 minutes West 86.50 feet to the said line of Bergen Avenue; thence
(4) Running along the same, North 62 degrees 7 minutes East 67.36 feet to the point and place of BEGINNING.  (Tax Lots 1A & 2B Block 1868.5).

FOR INFORMATION PURPOSES ONLY: "In compliance with Chapter 157, Laws of 1977, premises herein is Lot 42J.99 and Block 1868.5 on the City of Jersey City Tax Map."

2. Accounts:  Right to payment of monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold, leased, assigned or otherwise disposed of, (ii) for services rendered or to be rendered, (iii) for a policy of insurance issued or to be issued; (iv) for a secondary obligation incurred or to be incurred; (v) for energy provided or to be provided; (vi) for use or hire of a vessel under a charter or other contract; (vii) arising out of the use of a credit or charge card or information contained on or for use with the card; (viii) as winnings in a lottery or other game of chance operated or sponsored by a State or governmental unit of a State, or person licensed or authorized to operate the game by a State or governmental unit of a State.  It includes health-care insurance receivables and bondable transition property.  It does not include (i) rights to payment evidenced by chattel paper or an instrument; (ii) commercial tort claims; (iii) deposit accounts; (iv) investment property; (v) letter of credit rights or letters of credit; or (vi) rights to payment for money or funds advanced or sold, other than rights arising out of the use of a credit or charge card or information contained on or for use with the card.  NJSA 12A:9-102(2).

3. Chattel paper:  A record or records that evidence both a monetary obligation and a security interest in specific goods, a security interest in specific goods and software used in the goods, a security interest in specific goods and license of software used in the goods, a lease of specific goods, or a lease of specific goods and license of software used in the goods.  In this paragraph, "monetary obligation" means a monetary obligation secured by the goods or owed under a lease of the goods and includes a monetary obligation with respect to software used in the goods.  The term does not include (i) charters or other contracts involving the use or hire of a vessel or (ii) records that evidence a right to payment arising out of the use of a credit or charge card or information contained on or for use with the card.  If a transaction is evidenced by records that include an instrument or series of instruments, the group of records taken together constitutes chattel papers.  NJSA 12A:9-102(11).

4. Deposit Accounts:  Demand, time, savings, passbook or similar account maintained with a bank.  NJSA 12A:9-102(9)(29).

5. Documents:  A document of title or receipt of the type described in NJSA 12A:7-201(2).  NJSA 12A:9-102(30).

6. Electronic Chattel Paper:  Chattel paper evidenced by a record or records consisting of information stored in an electronic medium.  NJSA 12A:9-102(11).

7. Equipment:  Goods other than inventory, farm products, or consumer goods.  NJSA 12A:9-102(33).

8. General Intangibles: Any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas or other materials before extraction. The term includes payment intangibles and software. NJSA 12A:9-102(42).

9. Goods: All things that are movable when a security interest attaches including (i) fixtures; (ii) standing timber that is to be cut and removed under a contract of conveyance or contract for sale; (iii) the unborn young of animals; (iv) crops grown, growing, or to be grown, even if crops are produced on trees, vines, or bushes; (v) manufactured homes; (vi) computer program embedded in goods and any supporting information provided in connection with a transaction relating to the program if (a) the program is associated with the goods in such a manner that it customarily is considered part of the goods, or (b) by becoming the owner of the goods, a person acquires a right to use the program in connection with the goods. Does not include (i) a computer program embedded in goods that consist solely of the medium in which the program is embedded; (ii) accounts, chattel paper, commercial tort claims, deposit accounts, documents, general intangibles, instruments, investment property, letter of credit rights, letters of credit, money, or oil, gas, or other minerals before extraction. NJSA 12A:9-102(44).

10. Instruments: A negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary endorsement or assignment. Does not include (i) investment property, (ii) letters of credit, or (iii) writings that evidence a right to payment arising out of the use of a credit or charge card or information contained on or for use with the card. NJSA 12A:9-102(47).

11. Inventory: Goods, other than farm products, which are leased by a person as lessor, are held by a person for sale or lease to be furnished under a contract of service, are furnished by a person under a contract of service, or consist of raw materials, work in process, or materials used or consumed in a business. NJSA 12A:9-102(48).

12. Investment Property: A security, whether certificated or uncertificated, security entitlement, securities account, commodity contract, or commodity account NJSA 12A:9-102(49).

13. Letter-of-credit rights: A right to payment of performance under a letter of credit, whether or not the beneficiary has demanded or is at the time entitled to demand payment of performance. Does not include the right of a beneficiary to demand payment or performance under a letter of credit. NJSA 12A:9-102(51).

14. Payment Intangibles: A general intangible under which the account debtor's principal obligation is a monetary obligation. NJSA 12A:9-102(61).

**PLEASE TAKE NOTICE THAT** CA's lien on and/or other rights as to the collateral arise(s) pursuant to the following documents:

(a) Mortgage Note executed by Debtor H&S Journal Square Associates, LLC ("H&S" or the "Debtor") to Oritani Bank in the original principal amount of $14,250,000 dated June 23, 2008. A copy of the Mortgage Note is annexed hereto as **Exhibit**

4

**"A"**;

(b) Mortgage and Security Agreement dated June 23, 2008 recorded with the Hudson County Clerk on June 27, 2008 at Book 17015, Page 177, et seq. A copy of the Mortgage is annexed hereto as **Exhibit "B"**;

(c) Absolute Assignment of Leases and Rents dated June 23, 2008, recorded on June 27, 2008 with the Hudson County Clerk at Book 17015, Page 208 et seq. A copy of the Assignment is annexed hereto as **Exhibit "C"**;

(d) UCC-1 Financing Statement filed with the Hudson County Clerk on June 27, 2008 which statement was assigned Number 8918-08, and UCC-1 Financing Statement filed with the State of New Jersey on June 25, 2008 as No. 2804509. Copies of the Hudson County UCC-1 and the Secretary of State UCC-1 are annexed hereto collectively as **Exhibit "D"**;

(e) Assignment of Loan Documents dated March 10, 2011 and recorded with the Hudson County Clerk on April 8, 2011 in Book 1185, Page No. 52 whereby CA became the successor to the position of Oritani under the Loan Documents (including, but not limited to, the Note, Mortgage, Assignment of Rents and UCC-1 filings). A copy of the Assignment of Loan Documents is attached hereto as **Exhibit "E"**.

**PLEASE TAKE FURTHER NOTICE** that to the extent any further perfection of CA's perfected lien (as described above) may be required by means of possession or any other action, CA hereby perfects its security interest pursuant to 11 U.S.C. §546(b).

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Loan Documents, all parts, replacements, substitutes, profits, products and cash and non-cash proceeds of the Collateral constitute "cash collateral" within the meaning of 11 U.S.C. §363.[1] CA hereby objects to the use of its cash collateral pursuant to Section 363 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that CA hereby demands that the Debtor segregate and account for all rents and any cash collateral now in the possession, custody or control of the

---

[1] Nothing herein shall be deemed to admit that rents or other proceeds of the Collateral are property of the estate or otherwise deemed as "cash collateral" available for the Debtor-In-Possession's use. CA specifically submits that the rents derived from the Collateral are CA's property pursuant to the Assignment of Rents (Exhibit "C" hereto) and other loan documents all of which require the application of New Jersey law and reserves all rights and remedies in said regard. *See First Fidelity Bank, N.A. v. Jason Realty, L.P. (In re Jason Realty, LP)*, 59 F.3d 423, 427 (3d Cir. 1995).

Debtor, and which the Debtor may in the future collect or receive, pending turnover of such cash to CA.

**PLEASE TAKE FURTHER NOTICE** that to the extent the Debtor uses any of CA's cash collateral, CA demands adequate protection for any such use.

        FORMAN HOLT ELIADES & RAVIN LLC
        Attorneys for CA 912-921 Bergen Avenue, LLC

        By: */s/ David S. Catuogno*
            David S. Catuogno
            dcatuogno@formanlaw.com

Dated: May 24, 2011

## CERTIFICATION OF SERVICE

I certify that on May 24, 2011, I caused the attached Notice of Appearance and Demand for Service of Papers to be electronically filed with the Clerk, United States Bankruptcy Court, For The Southern District of New York by ECF and one copy of the aforementioned document by way of first class mail or ECF to those persons listed on the attached service list.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

*/s/ David S. Catuogno*
David S. Catuogno
dcatuogno@formanlaw.com

Dated: May 24, 2011

m:\lit\ca 912-921 bergen avenue\pleadings\notice of perfection.doc

**SERVICE LIST**

**H&S JOURNAL SQUARE ASSOCIATES LLC**
**Chapter 11**
**Case No.: 11-11623 (JMP)**

*Debtor*
H&S Journal Square Associates LLC
c/o Haskel Dweck
513 Quentin Road
Brooklyn, NY 11233
**Via First Class Mail**

*Attorneys for Debtor*
J. Ted Donovan, Esq.
Goldberg Weprin Finkel
Goldstein LLP
1501 Broadway, 22nd Floor
New York, NY 10036
**Via ECF**

*US Trustee*
United States Trustee
33 Whitehall Street
21st Floor
New York, NY 10004
**Via ECF**