LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue, Suite 201
Wantagh, NY 11793
516.826.6500
Gary F. Herbst, Esq.
Jacqulyn S. Loftin, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

H&S JOURNAL SQUARE ASSOCIATES LLC           Chapter 11
                                             Case No. 11-11623-jmp

        Debtor.
-------------------------------------------------------------------x

**NOTICE OF THE MOTION OF THE CHAPTER 11 TRUSTEE OF THE SUBSTANTIVELY CONSOLIDATED BANKRUPTCY ESTATE OF BURNSIDE AVENUE LOT STORES, INC. ET AL. SEEKING THE ENTRY OF AN ORDER: COMPELLING THE SALE OF THE DEBTOR'S REAL PROPERTY BY THE CHAPTER 11 TRUSTEE AS PART OF THE SUBSTANTIVELY CONSOLIDATED BANKRUPTCY ESTATE OF BURNSIDE AVENUE LOT STORES, INC (II) APPROVING BIDDING PROCEDURES AND CREDIT BID RIGHTS AS TO SECURED CREDITOR; AND (III) APPROVING ALLOCATION AND DISTRIBUTION OF SALE PROCEEDS INCLUSIVE OF CARVE-OUT FOR BENEFIT OF CREDITORS**

**PLEASE TAKE NOTICE** that on **September 8, 2011 at 10:00 a.m.**, or as soon thereafter as counsel may be heard, a hearing (the "Hearing") will be held before the Honorable James M. Peck, United States Bankruptcy Judge, in his courtroom at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, to consider the motion (the "Motion") of Gregory M. Messer, Esq., the Chapter 11 Trustee (the "Trustee") of the substantively consolidated estates of Burnside Avenue Lot Stores, Inc., *et al.*(the "Burnside Estate"), by his counsel, LaMonica Herbst & Maniscalco, LLP, seeking the entry of an Order, pursuant to §105 of Title 11 of the United States Code (the "Bankruptcy Code"): (i) to compel the sale of the real property known and located at 912-921 Bergen Avenue, Jersey City, 924 Bergen Avenue, Jersey City and Journal Square, Jersey City, New Jersey (collectively, the "H&S Journal Property") owned

1

by the debtor, H&S Journal Square Associates, Ltd. (the "Debtor"), and seeking approval of the proposed bid procedures; and (ii) authorizing the Trustee to conduct the sale pursuant to the Burnside Consent Order (as defined in the Motion) and authorizing the Trustee to sell the H&S Journal Property as part of the Burnside Estate and for related relief.

**PLEASE TAKE FURTHER NOTICE**, that objections to the relief requested in the Motion, if any, must be in writing, conform with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, state with particularity the grounds therefor and be filed with the Court, with a courtesy copy to the Chambers of the Honorable James M. Peck, United States Bankruptcy Judge, and served upon, so as to be received by, LaMonica Herbst & Maniscalco, LLP, the attorneys for the Trustee, Attn: Gary F. Herbst, Esq., no later than **September 1, 2011** as follows: (a) (i) through the Bankruptcy Court's electronic filing system (in accordance with Order No. 473), which may be accessed through the internet at the Bankruptcy Court's website at www.nysb.uscourts.gov; and (ii) in portable document format (PDF) using Adobe Exchange Software for conversion; or (b) if a party is unavailable to file electronically, such party shall submit the objection in PDF format on a diskette in an envelope with the case name, case number, type and title of document, document number to which the objection refers and the file name on the outside of the envelope.

**PLEASE TAKE FURTHER NOTICE** that the hearing to consider the Motion may be adjourned without further notice other than by announcement of such adjournment in open Court.

Dated: Wantagh, New York
August 15, 2011

                                  **LaMONICA HERBST & MANISCALCO, LLP**
                                  Counsel to the Trustee

                              By:    *s/ Gary F. Herbst*
                                      Gary F. Herbst, Esq.
                                      3305 Jerusalem Avenue
                                      Wantagh, New York 11793
                                      Ph. 516.826.6500

LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue, Suite 201
Wantagh, NY 11793
516.826.6500
Gary F. Herbst, Esq.
Jacqulyn S. Loftin, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

H&S JOURNAL SQUARE ASSOCIATES LLC                Chapter 11
                                                 Case No. 11-11623-jmp

                Debtor.
-------------------------------------------------------------------x

**THE MOTION OF THE CHAPTER 11 TRUSTEE OF THE SUBSTANTIVELY CONSOLIDATED BANKRUPTCY ESTATE OF BURNSIDE AVENUE LOT STORES, INC. ET AL. SEEKING THE ENTRY OF AN ORDER: COMPELLING THE SALE OF THE DEBTOR'S REAL PROPERTY BY THE CHAPTER 11 TRUSTEE AS PART OF THE SUBSTANTIVELY CONSOLIDATED BANKRUPTCY ESTATE OF BURNSIDE AVENUE LOT STORES, INC (II) APPROVING BIDDING PROCEDURES AND CREDIT BID RIGHTS AS TO SECURED CREDITOR; AND (III) APPROVING ALLOCATION AND DISTRIBUTION OF SALE PROCEEDS INCLUSIVE OF CARVE-OUT FOR BENEFIT OF CREDITORS**

To:    Honorable James M. Peck
        United States Bankruptcy Judge

Gregory M. Messer, the Chapter 11 Trustee (the "Trustee") of the substantively consolidated cases of Burnside Avenue Lot Stores *et al*. (the "Burnside Estate"), by his counsel, LaMonica Herbst & Maniscalco, LLP, by this motion (the "Motion") seeks the entry of an Order, pursuant to §105 of Title 11 of the United States Code (the "Bankruptcy Code"): (i) to compel the sale of the real property known and located at 912-921 Bergen Avenue, Jersey City, 924 Bergen Avenue, Jersey City and Journal Square, Jersey City, New Jersey (collectively, the "H&S Journal Property") owned by the debtor, H&S Journal Square Associates, Ltd. (the "Debtor"), and seeking approval of the proposed bid procedures and, (ii) authorizing the Trustee to conduct the sale pursuant to the Burnside Consent Order (as defined below) and authorizing the Trustee

3

to sell the H&S Journal Property as part of the Burnside Estate and for related relief, respectfully sets forth and represents the following:

## Procedural Background

1. On July 31, 2008 (the "Burnside Filing Date"), the debtors of the Burnside Estate filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2. The debtors' cases were jointly administered under the Burnside Estate pursuant to an Order of the Court dated August 1, 2008 and thereafter by Order of the Court dated January 13, 2010, were substantively consolidated.

3. By an Order dated December 18, 2008, the United States Trustee was directed to appoint a chapter 11 trustee of the Burnside Estate. The United States Trustee selected Gregory M. Messer as the Chapter 11 Trustee of the Burnside Estate.

4. On April 6, 2011 (the "Filing Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court.

5. The Debtor has remained in possession of its assets and is currently authorized to continue in the operation and management of its business as a debtor-in-possession pursuant to Bankruptcy Code §§1107 & 1108.

## FACTS

6. Shortly after his appointment, the Trustee entered into negotiations with the Scott Dweck, Albert Dweck, Valarie Dweck and Adele Dweck (collectively, the "Dwecks") who agreed to purchase the Burnside Estate assets and settle certain claims, in exchange for a fund to pay the creditors with allowed claims against the Burnside Estate. In February 2009, the Trustee and the Dwecks entered into a Funding Agreement (the "Burnside Funding Agreement")

whereby the Dwecks agreed to pay 30% of the Allowed Unsecured Claims and 100% of the Allowed Administrative Claims filed in the Burnside Estate. A copy of the Burnside Funding Agreement is annexed as Exhibit "A".

7. Moreover, under the Burnside Funding Agreement, each of the Dwecks issued a note and a confession of judgment (the "Burnside Judgments") in favor of the Trustee in an amount equal to 30% of the aggregate face amount of the filed proofs of claim of the holders of non-insider non-priority unsecured claims payable in three equal installments on July 30, 2009, January 30, 2010 and July 30, 2010.

8. Each of the Dwecks also issued a note in favor of the Trustee in an amount equal to the estimated unpaid Allowed Administrative and Priority Claims less $350,000, which the Trustee was already holding for the benefit of Burnside Estate creditors.

9. As security for the payments under the Burnside Funding Agreement, the Dwecks pledged the following properties: (i) 4 Candy Lane, Deal, New Jersey; (ii) 155 Main Street, Hackensack, New Jersey; (iii) 87 Monmouth Drive, Deal, New Jersey; (iv) 7 Lincoln Gardens, Long Branch, New Jersey; (v) 1153 East 22nd Street, Brooklyn, New York (the "East 22nd Street Property"); and (vi) 513 Quentin Road, Brooklyn, New York (the "Quentin Road Property").

10. More importantly, the Debtor, as owner of the H&S Journal Property, provided a guaranty of the Dweck Payments under the Burnside Funding Agreement. Indeed, Scott and Haskel Dweck, as members of the Debtor, entered into a Corporate Guarantee of All Liability dated February 20, 2009 (the "Guarantee") in favor of the Trustee, whereby the Debtor "irrevocably and unconditionally, jointly and severally, guaranteed the full and prompt payment by the Borrowers [the Dwecks] of all sums of money when and as the same shall become due and the full performance by the Borrowers [the Dwecks] of all it monetary and non-monetary

obligations to the Trustee, whether related to the Indebtedness or otherwise." A copy of the Guarantee is annexed as Exhibit "B".

11. The Burnside Funding Agreement also provided a default remedy in the event that the Dwecks defaulted under the terms. The default provision provided the Trustee with the following rights and remedies:

> [T]he Trustee. . .will have the right to exercise any and all rights and remedies available thereto, including, without limitation, enforcing the [Burnside] Judgments and the pursuit and collections on any of the Dweck Notes, the Administrative Notes and Guarantees, provided, however, that in enforcing the [Burnside] Judgments the Trustee shall first seek to recover the [Burnside] Judgments against the real property of Scott and Valerie Dweck, but if the equity in the real properties of Scott and Valerie Dweck is insufficient to satisfy the Dweck Payments then the Trustee, in his sole discretion may pursue recovery against all of the real properties set forth in paragraph 4 above [of the [Burnside] Funding Agreement], including the real properties of Hal and Adele Dweck. The Dwecks shall not assert any defense to payment.

*See* Exhibit "A" at ¶12.

The Burnside Funding Agreement goes on the provide that:

> The Bankruptcy Court administering these estates shall retain jurisdiction over this Agreement, the Dweck Notes, the Administrative Notes, the [Burnside] Judgments and the Guarantees and any and all enforcement thereof.

*See* Exhibit "A" at ¶4.

12. Thereafter, the Trustee, on behalf of the Burnside Estate, drafted a Disclosure Statement and Plan of Reorganization dated April 28, 2009 (the "Burnside Plan"). The terms of the Burnside Funding Agreement were incorporated into the Burnside Plan. Upon approval of the Disclosure Statement, the Trustee solicited and received the necessary votes in favor of the Burnside Plan. The Burnside Plan was confirmed in an Order dated August 13, 2009.

6

13. The Dwecks defaulted shortly after the first 10% distribution to those creditors with Allowed Unsecured Claims. As a result, the Trustee moved to modify the Burnside Plan to extend the payment dates under the Burnside Funding Agreement and Plan and to give the Dwecks additional time to cure the defaults.

14. Again, the Burnside Funding Agreement, including the Debtor's Guarantee, was incorporated into a modified plan dated February 12, 2010 (the "Burnside Modified Plan"). After the solicitation of the Burnside Modified Plan and the Trustee receiving the necessary votes in favor of the Burnside Modified Plan on April 28, 2010, this Court entered an Order confirming the Burnside Modified Plan. The Dwecks defaulted shortly after the Court's confirmation of the Burnside Modified Plan.

15. As a result of the Dwecks' second default, the Trustee filed a motion to compel the sale of certain real property pledged as collateral under the Burnside Funding Agreement, the Plan and Modified Plan. Specifically, the Trustee sought the Court's approval to compel the sale of the East 22nd Street and Quentin Road Property and the H&S Journal Property. The Dwecks did not oppose the motion, but sought time to effectuate the sales of the Properties. At the hearing on the motion, the Court granted the Trustee's requested relief and entered an Order on consent of the Dwecks dated March 2, 2011 (the "Burnside Consent Order"), a copy of which is annexed as Exhibit "C", which provided for the following relief for the H&S Journal Property:

> **ORDERED,** that the Dwecks shall immediately move forward with the sale of the H&S Journal Property; and it is further
>
> **ORDERED,** that if the Dwecks do not have a contract of sale for the H&S Journal Property by May 31, 2011, the Trustee shall be authorized to move forward with the sale of the H&S Journal Property in conjunction with the Dwecks and H&S [the Debtor]; and it is further

*See* Exhibit "C".

16. Subsequent to the entry of the Burnside Consent Order, the Trustee actively monitored the progress on the sale of the H&S Journal Property. The Dwecks advised that they retained a broker and were moving forward with the sale. A review of the docket reflects that four (4) months into a single asset real estate case, the Debtor has not retained a broker nor has it taken any other action in furtherance of the marketing and sale of the H&S Journal Property, nor has the Debtor reported any offers to purchase the H&S Journal Property. The time afforded to the Debtor to sell the property under the Burnside Consent Order lapsed more than eighty (80) days ago. Indeed, more than four months passed since this case was filed without any movement whatsoever towards a sale despite assurances by the Debtor.

17. The Trustee cannot wait indefinitely while a default exists under the Burnside Modified Plan. As one of the two remaining Properties available to fund a distribution under the Burnside Funding Agreement, it is essential that the sale of the H&S Journal Property proceed without any further delay. Upon the Dwecks' default, the Debtor, as guarantor, owed the Burnside Estate the remaining balance of the amounts owed by the Dwecks under the terms of the Burnside Funding Agreement. The Burnside Estate is still owed in excess of $1,500,000.00 (the "Burnside Estate Claim"), depending upon the resolution of certain pending claims objections, and constitutes the vast majority of the unsecured creditor body in the Debtor's estate As such, the Burnside Estate has a substantial stake in the outcome of this case and the liquidation of the H&S Journal Property. Further, the Trustee, on behalf of the Burnside Estate, will proceed with the liquidation of the remaining Quentin Road Property pledged as collateral under the Burnside Funding Agreement.

18. CA 912 921 Bergen Avenue, LLC ("CA"), successor in interest to Oritani Bank

("Ortani") maintains a first priority secured interest in the amount of $18,442,173.27 secured by the H&S Journal Property. Indeed, on or about September 22, 2009, Oritani initiated a complaint in foreclosure against the Debtor seeking to foreclose on the H&S Journal Property (the "Foreclosure Action"). In the context of that case, on or about November 9, 2009, the Superior Court entered a Consent Order in the Foreclosure Action resolving Oritani's Application to appoint a Rent Receiver whereby the Debtor and Oritani agreed that all rents derived from the H&S Journal Property would be paid directly to Oritani and would thereafter be disbursed by Oritani on account of sums due under the loan, including interest due to Oritani, taxes and other charges. This practice has continued in the chapter 11 case on the consent of the parties. The parties have also filed a Motion to Approve a Stipulation and Consent Order Authorizing the use of Cash Collateral [Docket No. 10] which Stipulation and Consent Order incorporates this arrangement.

19. On April 21, 2010, the Superior Court of New Jersey entered an Order awarding summary judgment to Oritani in the Foreclosure Action with the amounts due under the note and loan documents to be determined by the court at the time of entry of final judgment. Prior to the entry of Final Judgment of Foreclosure, on March 10, 2011, Oritani sold its interest in the loan and loan documents to CA. The sale of the loan documents is memorialized by, among other things, an Assignment of Loan Documents dated March 10, 2011, which Assignment is recorded with the Hudson County Register of Deeds on April 8, 2011 in Book 1185, Page 52, *et seq*. whereby CA became the successor to the position of Oritani under the loan documents (including, but not limited to, the Note, Mortgage, Assignment of Rents and UCC filings) and further the successor to the position of Oritani in the Foreclosure Action and other proceedings pending between Oritani and the Debtor. As a result, CA has a primary, perfected first lien

position on the H&S Journal Property.

20. On June 2, 2011, CA filed a proof of claim in this bankruptcy proceeding asserting that, as of the Filing Date, the Debtor was indebted to CA in at least the amount of $18,442,173.27. (Claim No. 2 on the Claim Register).

21. Per the Stipulation and Consent Order regarding Cash Collateral, the Debtor acknowledged the validity and priority of CA's lien and acknowledges an outstanding principal balance of $14,077,715.02, as of the Filing Date, at a non-default interest rate of 5.75% per annum. Among other things, the Debtor contests, however, the applicability and the aggregate amount of the default rate of interest and the interest calculations set forth by CA in its proof of claim plus other charges and fees asserted by CA to be due.

22. The Trustee, concerned that a sale of the H&S Journal Property would not yield any benefit to any party other than the secured creditor, spent time and effort to negotiate terms of a sale that would redound to the benefit of other creditors and provide for a cap on the amount of the secured lenders debt. In this regard, while the Debtor may dispute the results of those negotiations, the Trustee believes that it was in the best interests of the Burnside Estate and its creditors to negotiate a reduced secured claim with a sharing of the sale proceeds that would guarantee a reasonable and substantial recovery to creditors, and not gamble for a maximum result which, if unsuccessful, would leave the Burnside Estate and the Debtor's creditors with nothing from the H&S Journal Property. Subject to the approval of this Court, the Trustee and the CA agree to the following terms of sale (the "Bid Procedures"):

    (a) CA shall be entitled to a base credit bid of $16,000,000.00 (the "Initial Bid"). If the H&S Journal Property sells for the Initial Bid (or less), CA will carve out and pay $300,000.00 (the "Carve Out") for the benefit of creditors;

    (b) If a third party is the successful purchaser, the Carve Out will come from the additional proceeds of the sale after payment of CA's lien;

(c) After the Initial Bid, CA is entitled to receive the next $300,000.00 to recoup for the amount of the Carve Out up to a total sale price of $16,300,000.00;

(d) If the successful bid is between $16,300,000.00 and $17,000,000.00, the sale proceeds will be split as follows: (i) 71.5% to CA; and (ii) 28.5% to the Estate. Further, if CA chooses to increase its bid into this range, it will be responsible to pay for the Carve Out, plus 28.5% of the bid over $16,300,000.00 (*e.g.*, on a $17,000,000.00 sale, the Estate would receive $500,000.00);

(e) If the successful Bid is between $17,000,000.00 and $18,000,000.00, the sale proceeds will be split as follows: (i) 50% to CA; and (ii) 50% to the Estate (*e.g.,* on a sale of $18,000,000.00 the Burnside Estate would receive $1,000,000.00);

(f) If the successful bid is $18,000,000.00 or more the sale proceeds will be split as follows: (i) 25% to CA; and (ii) 75% to the Burnside Estate (*e.g.*, on a sale in excess of $18,000,000.00 the Burnside Estate would receive $1,000,000.00 plus 75% of every dollar over $18,000,000.00 and 100% of every dollar once CA receives its capped amount as set forth below);

(g) CA agrees to cap its total distribution from the sale proceeds to $17,750,000.00 and, in its sole discretion, may agree to reduce the cap amount to $17,500,000.00. If CA were to receive its capped amount of $17,750,000, the sale price would be $21 million and the Estate will necessarily have received $3,250,000 from the sale proceeds;

(h) CA also may, but is not required, to credit bid the full amount of its secured claim up to the amount set forth in its proof of claim as calculated as the date of the sale. To the extent that CA makes a successful credit bid, it will be responsible for the payment to the Estate of the Carve-Out amounts the Estate would have received in a third party sale scenario, as set forth above; and

(i) The costs of the sale will be paid for by a Buyer's premium, however if CA is the successful bidder, the parties will negotiate in good faith an appropriate amount of compensation to the broker/auctioneer.

23. The Trustee submits that a sale under these proposed Bid Procedures is in the best interest of the Burnside Estate as it will satisfy the claim of the first position secured creditor and provide a reasonable and substantial return to the unsecured creditor body that might otherwise receive nothing, while at the same time avoiding litigation over CA's security interest and the Trustee's interest and claims in and to the proceeds of sale. This sale process is advocated by the

creditor with the single largest unsecured claim against the Debtor's estate, which creditor constitutes the overwhelming majority of the unsecured creditor body.[1] While the Debtor may dispute these terms the Trustee submits that this resolution provides certainty that there will be a distribution from the sale of the H&S Journal Property. Simply stated, the Trustee and the Burnside Estate can wait no longer. Therefore, the Trustee submits that an immediate sale of the H&S Journal Property is in the best interest of the creditors as it avoids the constant increase of administrative fees and expenses incurred in chapter 11 and will provide a meaningful recovery to all of the Debtor's creditors. Accordingly, the Trustee seeks the entry of an Order compelling the sale of the H&S Journal Property under the proposed Bid Procedures.

24. In the alternative, the Trustee respectfully requests that the Court authorize the Trustee to sell the H&S Journal Property as part of the Burnside Estate in accordance with the prior Burnside Consent Order. It is clear that Dwecks, on behalf of the Debtor, seem incapable, unable or unwilling to sell the H&S Journal Property and therefore, the Trustee, in accordance with the Burnside Consent Order, should be authorized the sell it himself on behalf of the Burnside Estate. This Court had previously set a deadline of May 31, 2011 for the Dwecks to sell the H&S Journal Property and further ordered that, if there was no sale by that date, the Trustee would be authorized to proceed with the sale. Indeed, since that relief was set forth in the Burnside Consent Order, the Debtor effectively already consented to the sale of the H&S Journal Property by the Trustee at this time. As a practical matter, the Debtor's deadline to sell the H&S Journal Property lapsed almost three (3) months ago. Accordingly, as alternative relief, the Trustee respectfully requests the entry of an Order in this case authorizing the Trustee's sale of the H&S Journal Property as part of the Burnside Estate consistent with the provisions of the

---

[1] On information and belief, other creditors of the Debtor's estate will likely support the instant Motion.

Burnside Consent Order.[2]

**BASIS FOR RELIEF**

25. The Trustee seeks to enforce this Court's prior Order authorizing the sale of the H&S Journal Property. It is clear in the Orders entered in the Burnside Estate proceeding that this Court has retained jurisdiction over the H&S Journal Property as it effectively collateralized the Burnside Funding Agreement. Specifically, the Burnside Funding Agreement, approved, by an Order of the Court, and is incorporated into the Burnside Modified Plan, specifically provided that:

> The Bankruptcy Court administering these estates shall retain jurisdiction over this Agreement, the Dweck Notes, the Administrative Notes, the Judgments and the Guarantees and any and all enforcement thereof.

*See* Exhibit "A" at ¶4.

26. Given the clear language of the Burnside Modified Plan, Funding Agreement and the Bankruptcy Code, this Court has the power and authority to compel the sale of the H&S Journal Property in the event that the Dwecks do not consent to the sale.

27. Moreover, although the language in the Burnside Funding Agreement, the Modified Plan and the Consent Order are sufficient to compel the sale of the H&S Journal Property, the Court would also have authority to compel the sale under Bankruptcy Code §105, which provides:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to

---

[2] To the extent that the automatic stay under Bankruptcy Code §362 may otherwise apply, the Burnside Modified Plan, Funding Agreement and the Burnside Consent Order make the automatic stay inapplicable and gives the Trustee the requisite authority to move forward with the sale of the H&S Journal Property.

prevent an abuse of process.

## 11 U.S.C. §105

28. Accordingly, under Bankruptcy Code §105, the Court may use its equitable powers to issue an order to enjoin the actions of a third party that may impact the debtor's ability to reorganize. The Court in *Adelphia Communications Corp. v. The America Channel (In re Adelphia Communications Corp.)* 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006), enjoining the prosecution of antitrust litigation in another forum invoked its §105 powers and opined, "[S]ection 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process. A bankruptcy court may enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case before it." *Id.*

29. Other than the prior motion which resulted in the entry of the Burnside Consent Order, no prior request for relief sought herein has been made to this or any other court.

30. For all the foregoing reasons, the relief requested herein is appropriate and in the best interest of all interested parties, this estate, the Burnside Estate and their creditors.

**WHEREFORE**, the Trustee requests that the Court enter an Order: (i) compelling the sale of H&S Journal Property and approving the proposed Bid Procedures; or, in the alternative, (ii) enforcing the Consent Order and authorizing the Trustee to sell the H&S Journal Property as part of the Burnside Estate and further relief as the Court deems just and proper.

Dated: Wantagh, New York
      August 15, 2011

**LAMONICA HERBST & MANISCALCO, LLP**
Attorneys for the Trustee of the Burnside Estate

By: *s/ Gary F. Herbst*
Gary F. Herbst, Esq.
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
516.826.6500