UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                          : Chapter 11
                                               :
H&S JOURNAL SQUARE ASSOCIATES, LLC,            : Case No. 11-11623 (JMP)
                                               :
    Debtor.                                    :
---------------------------------------------------------------x

**OBJECTION AND RESERVATION OF RIGHTS OF ROBERT K. FUTTERMAN & ASSOCIATES, LLC TO MOTION BY CHAPTER 11 TRUSTEE OF BANKRUPTCY ESTATE OF BURNSIDE AVENUE LOT STORES, INC. FOR AN ORDER (I) COMPELLING THE SALE OF THE DEBTOR'S REAL PROPERTY BY BURNSIDE AVENUE LOT STORES, INC. TRUSTEE; (II) APPROVING BIDDING PROCEDURES AND CREDIT BID RIGHTS AS TO SECURED CREDITOR; AND (III) APPROVING ALLOCATION AND DISTRIBUTION OF SALE PROCEEDS**

Robert K. Futterman & Associates, LLC ("RKF"), by its attorneys, Sills Cummis & Gross, P.C., respectfully submits this objection and reservation of rights with respect to the motion ("Motion") by the Chapter 11 Trustee of the substantively consolidated bankruptcy estate of Burnside Avenue Lot Stores, Inc. et al. for entry of an Order (i) compelling the sale of the Debtor's real property by the Burnside Trustee as part of the Burnside Estate; (ii) approving bidding procedures and credit bid rights of the secured creditor; and (iii) approving the allocation and distribution of sale proceeds inclusive of carve-out for the benefit of creditors, and in support of its Objection, RKF represents as follows:

**PRELIMINARY STATEMENT**

RKF is a real estate broker that, in 2005, was retained by H&S Journal Square Associates, LLC ("H&S") to obtain Bally's as a tenant in the Journal Square Property. RKF has not been paid the commission it is contractually due. While RKF supports the sale of the Journal Square Property, such sale should be for the benefit of all of H&S's creditors, not just one. The proceeds of the sale should be deposited in the H&S estate and should be distributed in accordance with the Bankruptcy Code.

1965458 v3

## BACKGROUND

A.  **RKF's Commission Agreement with H&S**

1.  On December 22, 2005, RKF and Empress Enterprises 920, Inc., the predecessor in interest to H&S Journal Square Associates, LLC ("H&S" or the "Debtor"), the above-captioned debtor and debtor-in-possession, executed a Commission Agreement. A copy of the Commission Agreement is annexed hereto as Exhibit A. Pursuant to the Commission Agreement, the Debtor agreed to pay to RKF a commission of $270,000.00 for RKF's procurement of a tenant, Bally Total Fitness or any affiliated entity, successor or assignee, for the Journal Square Property. Pursuant to Paragraph 12 of the Commission Agreement, "the obligation to pay and the right to receive any of the commissions described [in the Commission Agreement] shall inure to the benefit and obligation of the respective heirs, successors and assigns of Owner [Empress] and Broker." See Exhibit A, Agreement, ¶ 12.

2.  Although RKF successfully procured Bally Total Fitness ("Bally") as a tenant, the Debtor has failed and refused to pay the commission due to RKF.

3.  On April 29, 2009, RKF filed a complaint in the Superior Court of New Jersey, Hudson County, Law Division, Docket No. HUD-L-002178-09 (the "Commission Litigation"), demanding judgment against Empress and the Debtor for failure to pay RKF's commission. Trial was scheduled for April 12, 2011. The Commission Litigation was stayed as a result of H&S's bankruptcy filing.

B.  **The H&S Journal Square Bankruptcy Case**

4.  H&S filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 6, 2011.

5.  No creditors' committee has been appointed in this case.

6. No Chapter 11 trustee has been appointed for the Debtor. The Debtor has remained in possession of its assets and has operated its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

**B.    The Dwecks' Funding Agreement**

7. On or about July 18, 2008 (the "Burnside Filing Date"), the debtors of the Burnside Estate[1] filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court"). The cases were jointly administered under Case No. 08-12988 (JMP) until confirmation of the Burnside Estate

8. By Order dated December 18, 2008, the United States Trustee was directed to appoint a chapter 11 trustee for the Burnside Estate. Gregory M. Messer (the "Burnside Trustee") was appointed as the chapter 11 trustee of the Burnside Estate.

9. After his appointment, the Burnside Trustee had negotiations with Scott Dweck, Valerie Dweck, Haskel (Hal) Dweck, and Adele Dweck (collectively, the "Dwecks"), who agreed to purchase the Burnside Estate assets and settle certain claims in exchange for a fund to pay the creditors of the Burnside Estate.

10. In February 2009, the Burnside Trustee and the Dwecks executed a Funding Agreement whereby the Dwecks agreed to pay 30% of allowed unsecured claims against the

---

[1] The debtors of the Burnside Estate are: Burnside Avenue Lot Stores, Inc. (Case No. 08-12988 (JMP)), Lot Stores Management Co. Inc., Lot Stores Inc., Albert Dweck Distributors, Inc., 138th Street Lot Stores, Inc., Castle Hill Lot Stores, Inc., 125th Street Lot Stores, Inc., Castle Center Lot Stores, Inc., Lenox Avenue Lot Stores, Inc., Retail Hub Family Place, Inc., Avon Avenue Lot Stores, Inc., 155 Main Street Lot Stores, Inc., Lot Stores of Roebling Center, Inc., Old Colony Lot Stores, Inc., Atlantic Avenue Lot Stores, Inc., Lot Stores of Strawberry Square, Inc., Front Street Lot Stores, Inc., Lot Stores of N. Philadelphia, Inc., Imperial Plaza Lot Stores, Inc., Woodland Village Lot Stores, Inc., 1211 Lot Stores, Inc., Overbrook Plaza Lot Stores, Inc., Westside Shopping Center Lot Stores, Inc., Beltway Plaza Lot Stores, Inc., East Over Lot Stores, Inc. , East River Lot Stores, Inc., and Lot Stores of H Street Connection, Inc.

Burnside Estate and 100% of the allowed administrative claims against the Burnside Estate. A copy of the Funding Agreement was annexed to the Motion as Exhibit A.

11. The Funding Agreement provides that, to secure the Dweck's obligations thereunder, each of the Dwecks would execute a promissory note and a confession of judgment (the "Burnside Judgments"). The Funding Agreement further provides that the Burnside Judgments would be recorded against six (6) parcels of residential real property that the Dwecks owned personally (collectively, the "Dweck Properties").[2]

12. As additional collateral, Hal and Scott Dweck agreed to cause H&S Journal Square Associates, LLC, a limited liability company in which they are co-members, to provide a guaranty (the "H&S Guaranty") of the Dwecks' obligations under the Funding Agreement. H&S Journal Square Associates, LLC owns real property located at 912-920 Bergen Avenue, 922-924 Bergen Avenue, and 33-34 Journal Square in Jersey City, New Jersey (collectively, the "Journal Square Property"). Unlike the Dweck's obligations, the H&S Guaranty was not reduced to judgment and no judgment or other lien in favor of the Burnside Trustee was ever recorded against the Journal Square Property.

C. **The Burnside Trustee's Motion to Compel Sale of Certain Real Property.**

13. After the Dwecks defaulted on their obligations under the Funding Agreement, the Burnside Trustee filed a motion to compel sale of certain real estate, including Valerie Dweck's personal residence located at 1153 East 22nd Street, Brooklyn, New York ("East 22nd Property"), Adele Dweck's personal residence located at 513 Quentin Road, Brooklyn, New York ("Quentin Road Property") and the Journal Square Property.

---

[2] The Dweck Properties include: Scott and Valerie Dwek's personal residence located at 4 Candy Lane, Deal, New Jersey; Scott and Hal Dweck's property located at 155 Main Street, Hackensack, New Jersey; Adele Dweck's personal residence located at 87 Monmouth Drive, Deal, New Jersey; Scott and Valerie Dweck's property located at 7 Lincoln Gardens, Long Branch, New Jersey; Valerie Dweck's personal residence located at 1153 East 22nd Street, Brooklyn, New York; and Adele Dweck's personal residence located at 513 Quentin Road, Brooklyn, New York.

14. This Court entered a Consent Order dated March 2, 2011 ("Consent Order") which provided, *inter alia*, that "if the Dwecks do not have a contract of sale for the H&S Journal Property by May 31, 2011, the Trustee shall be authorized to move forward with the sale of the H&S Journal Property in conjunction with the Dwecks and H&S." The Consent Order is annexed to the Motion as Exhibit C.

### D. The Current Motion to Compel Sale of the Journal Square Property

15. On August 15, 2011, the Burnside Trustee filed the present motion. By the Motion, the Burnside Trustee seeks to (i) compel the sale of the Journal Square Property as if it was part of the Burnside Estate, (ii) approve bidding procedures which, among other things, authorize the secured creditor to credit bid pursuant to certain parameters, and (iii) approve the proposed distribution of the proceeds from the sale.

16. According to the Motion,[3] the proposed bidding procedures include authorization of a credit bid by CA 912-921 Bergen Avenue, LLC ("CA") of its secured claim, starting at $16.0 million. In exchange, CA has agreed to cap its distribution from the sale at $17.75 million. CA has agreed to carve out a minimum of $300,000 ("Carve-Out") for the benefit of the Burnside Estate creditors, and depending upon the sale price, the Carve-Out amount could increase according to an agreed-upon formula.

17. The Motion suggests that the Carve-Out will inure solely to the benefit of the creditors of the Burnside Estate, and not to the creditors of the H&S Journal Square Estate.

---

[3] This description of the agreement between the Burnside Trustee and CA is based upon the Motion. It is unknown whether there is a written agreement between the Burnside Trustee and CA, but not such writing was annexed to the Motion. If the agreement between the Burnside Trustee and CA is in a separate writing, RKF respectfully requests that it be filed with the Court or, alternatively, produced to RKF for review.

1965458 v3

**OBJECTION**

18.     For the reasons set forth herein, RKF objects to the Motion to the extent that the Burnside Trustee seeks to sell the Journal Square Property as part of the Burnside Estate and will allocate and distribute the Carve-Out solely to the Burnside Estate.

A.  **The Journal Square Property Should Be Sold, But Not as Part of the Burnside Estate.**

19.     RKF supports the sale of the Journal Square Property, but objects to the sale of the property as part of the Burnside Estate. The Consent Order provided, *inter alia*, that "if the Dwecks do not have a contract of sale for the H&S Journal Property by May 31, 2011, the Trustee shall be authorized to move forward with the sale of the H&S Journal Property in conjunction with the Dwecks and H&S." RKF will assume, for purposes of this Motion, that this Court has authority under 11 U.S.C. § 105(a) to enforce this provision of the Consent Order. However, the Consent Order does not transform the Journal Square Property into property of the Burnside Estate, nor does it grant the Burnside Trustee any greater distribution rights in the proceeds of sale than the Burnside Trustee otherwise has under the Funding Agreement and the H&S Guaranty.

20.     The Burnside Estate is merely a general unsecured creditor of H&S. The H&S Guaranty is a contractual obligation, which the Burnside Trustee alleges has been breached. Neither the Funding Agreement nor the H&S Guaranty granted the Burnside Trustee a security interest in the Journal Square Property, and even if they did, such interest has not been perfected by the Burnside Estate. The Burnside Estate does not hold a mortgage or judgment against H&S Journal Square. Absent the Consent Order, as a general unsecured creditor, the Burnside Estate would have no authority to compel the sale of the Journal Square Property.[4]

---

[4] The Burnside Trustee asserts that this Court has authority to compel sale of the Journal Square Property because the Court has retained jurisdiction over the Funding Agreement, the promissory notes issued by the Dwecks for

**B.       This Court Should Not Approve the Allocation and Distribution of Sale Proceeds**

21.     Assuming, *arguendo*, that the Burnside Trustee has the authority to compel the sale of the Journal Square Property and the Court directs its sale, the proposed distribution of the sale proceeds should not be approved.

22.     RKF does not object to the Carve-Out or the provision permitting CA to credit bid its secured claim. RKF's objection is limited to the proposed distribution of the sale proceeds, including any Carve-Out from the sale.

23.     The distribution scheme proposed by the Burnside Trustee violates the distribution provisions of the Bankruptcy Code. The Burnside Estate is merely a general unsecured creditor of the Debtor, and all general unsecured creditors are entitled to be treated equally in terms of distribution. If the Motion is granted and the Burnside Trustee is permitted to sell the Journal Square Property as part of the Burnside Estate, the Burnside Estate would be granted the rights of a levying judgment creditor without having to follow the procedural due process rules that other H&S creditors, like RKF, have had to follow. RKF commenced litigation against the Debtor as a result of the Debtor's breach of contract and was about to obtain judgment when the Debtor filed bankruptcy. If H&S's bankruptcy case had not been filed, RKF would likely have had priority over the Burnside Estate because RKF was about to go to trial while the Burnside Estate has yet to file a complaint. RKF respectfully requests that, if sale of the Journal Square Property is ordered, the net proceeds of sale and any Carve-Out be paid to the H&S Estate. The sale proceeds and the Carve-Out should be distributed in accordance with the distribution priorities set forth in the Bankruptcy Code.

---

payments to the Burnside unsecured creditors and administrative claimants, the Burnside Judgments and the H&S Guaranty and all enforcement of these obligations. However, the retention of jurisdiction does not expand upon or grant the Burnside Estate any additional rights than are contained in the parties' agreements.

1965458 v3

24. Moreover, it is not clear that the Burnside Trustee should participate in the proceeds of sale of the Journal Square Property at all. The Dwecks' obligation to the Burnside Estate is secured by six parcels of real estate. The Burnside Estate has other collateral pledged by the Dwecks that has yet to be liquidated, i.e., Adele Dweck's residence located at 513 Quentin Road, Brooklyn, New York ("Quentin Road Property"). If the Quentin Road Property is liquidated before the Journal Square Property or the distribution of proceeds from the H&S Property sale awaits liquidation of all Burnside Estate collateral, the Burnside Estate may have no claim against the H&S Journal Square Estate. Since the Journal Square Property is the Debtor's only asset, the H&S creditors, including RKF, will be irreparably harmed if the sale occurs in the Burnside case or the Carve-Out is paid solely to the Burnside Estate.

25. There is no harm to the Burnside Estate if the proceeds of the sale of the Debtor's property are paid to the Debtor's Estate. If the Burnside Estate has a claim against H&S Journal Square after sale of all parcels collateralizing the Dwecks' obligations to the Burnside Estate, the Burnside Estate would receive a *pro rata* distribution along with the Debtor's other unsecured creditors. In the Motion, the Burnside Trustee alleges that the Burnside Estate holds the single largest unsecured claim against the H&S Estate. If so, the Burnside Estate can expect to receive the largest share of the net proceeds and the Carve-Out.

**RESERVATION OF RIGHTS**

26. If this Court authorizes the sale of the Journal Square Property, RKF reserves all of its rights regarding the payment of commissions due upon the sale.

27. In Paragraph 22(i) of the Motion, the Burnside Trustee states that the bidding procedures provide that, "if CA is the successful bidder, the parties will negotiate in good faith an appropriate amount of compensation to the broker/auctioneer." *Id.* at ¶ 22(i).

28. On February 3, 2011, RKF and the Debtor entered into an Exclusive Sales Agreement pursuant to which the Debtor agreed to pay a sales commission to RKF if the Journal Square Property was sold to certain parties identified on Exhibit A to the agreement. Among the parties listed on Exhibit A is Alex Adjmi, who is one of the owners of CA.

29. If CA is the successful purchaser, by credit bid or otherwise, RKF is entitled to the commission negotiated between RKF and the Debtor as set forth in the Exclusive Sales Agreement.

## CONCLUSION

For the foregoing reasons, RKF respectfully requests that the Motion be denied and that the Court grant such other and further relief as is just and proper under the circumstances.

SILLS CUMMIS & GROSS, P.C.

Dated: August 31, 2011  By: /s/ Valerie A. Hamilton
New York, New York      Andrew H. Sherman
                        Valerie A. Hamilton

                        30 Rockefeller Plaza, 29th Floor
                        New York, NY 10112
                        212-643-7000 (P)
                        asherman@sillscummis.com
                        vhamilton@sillscummis.com

                        Attorneys for Robert K. Futterman & Associates, LLC